McKinney, J.,
delivered tlio opinion of the Court.
The complainants are creditors of James T. Connell. They seek, by the several bills consolidated in this record, to set aside certain conveyances, alleged to be fraudulent, made by.said Connell, and to bo let in to have satisfaction of their respective debts out of the property thus conveyed.
The several bills were dismissed by the Chancellor.
It appears that on the 12th day of June, 1856, James T. Connell, being in a very embarrassed and failing condition, made an assignment for the benefit of certain of his creditors, of thirteen slaves, and other personal property. At the same time, he made an absolute sale and conveyance of five slaves to his brother-in-law, William G-. Logan, who was not then of full age, for the consideration of §2000.00. And on the same occasion, he made an absolute sale and conveyance, to liis mother, of his remainder interest in a tract of land of 198 acres (in which his mother had a dower estate) at the price of §7.50 per acre, and likewise of his individual moiety of another tract of land, of 383 acres, at the price of $15.00 per acre.
These several conveyances áre impeached for fraud, and are sought to be avoided.
As regards the assignment for the benefit of creditors, and the conveyance of the five slaves to Logan, we need only remark that, upon a view of ail the facts, we are of opinion that the complainants are not entitled to any relief; and thus far the decree of the Chancellor will be affirmed.
It remains to be considered whether the complainants are entitled to any relief as respects the conveyance to Mrs. Con-nell of the real estate.
The proof shows that at the time of the conveyance, or *580 immediately preceding"its execution, and as part of the same entire transaction, a settlement of accounts was made between-James. T. Connell and bis mother, according to which there was due from the former to the latter the sum of §1575.00. The aggregate price of the land, as estimated by the parties, was $3615.GO. This was liquidated as follows : A credit was allowed for. the sum of $1575.00, assumed to be due to Mrs. C'omiell from her son: a cash payment was-made at the time, of $1413.85, leaving a balance of the- consideration money of $626.15, for which Mrs. Connell executed a note, due one day after date, payable to her son, and which the proof shows she afterwards paid.
It is alleged that this demand of Mrs'. Connell against her son was unfounded and fabricated for the occasion. The answer of Mrs. Connell asserts, in strong' terms, that it was a just debt, and the case as to this- matter' stand's' upon the bill and answer’; there is no proof upon the subject either way.
A copy of the statement of the- account, ma-d'e- out at the time of the execution of the conveyance, is exhibited by Mrs. Connell with her answer. It is made up of various items for money loaned at different times, hire of slaves, horses, mnles, and1 grain, all of which are without date.
This account, upon its face, is suspicious, and the time and circumstances of its settlement tend to strengthen suspicion of its fairness. We by no- means assume that the claim is positively fraudulent or unfounded. This is not necessary to be assumed, fn the view we have taken of tho case. The justice of the claim being impeached by the bill, and the circumstances — though insufficient to establish that it is actually unfounded — yet, being at least sufficient to cast strong suspicion over it, it was i-ncu-mbent upon Mrs. Connnell to establish its-justice by satisfactory proof. 6 Humph., 158. And from the character of the account, it would seem flint the items, if just, were susceptible of proof, without any requirement either impossible or unreasonable in itself, to some extent at least.
So far, then, as this part of the consideration is concerned, *581 wc think there is an entire failure of proof to support the conveyance.
It is further alleged in the bill that the money passed from Mrs. Connell t© her son, as part of the consideration of the conveyance, was not her money; that it was either the money of her sen placed in her hands previously for the purpose of giving- color .to .the transaction, or money borrowed for that purpose, and .restored again to the proper owner after the occasion had passed. The answer contains a very emphatic denial of this .charge, and a positive asseveration of the fact that .the .money .was her own. The proof makes it more than probable that the money could not have been furnished by the sen, .and there is no just foundation for the assumption that it was-borrowed from any one ; and, although Mrs. Council fails to account satisfactorily for tho possession of so large an amount of money, and notwithstanding the proof of the complainants leaves this point involved in something- of obscurity and mystery, yet the fact is fully proved that she did pay the money, and the presumption of law, in tho absence of countervailing proof, is that it was her own; and in view of all the evidence, we do not feel warranted in saying that this presumption is repelled. G-iving to the opposing proof of the complainants all the force to which it is properly entitled, wo ar.e still .constrained to admit that the money may have actually belonged to her. Such is our conclusion as to the sum of $1413.85, paid down, as well as to the sum of $626-15 paid afterwards.
What appropriation James T. Connell may have made of this money, is an irrelevant inquiry, in the present case, as Mrs. Connell was not, in law, chargeable with the duty of seeing to its appropriate n-
It is further alleged that the prices at which the lands were sold to Mrs. Connell, were scarcely half the lair value. The weight of the proof establishes, as it seems to us, that the sale was at an under value so considerable as, upon that ground, in connection with the fact as to tho credit of $1575.00 allowed Mrs. Connell, and other suspicious circumstances at *582 tending tlie transaction, to demand the interposition of a court of equity. The principle upon which a court of equity interferes in sncli a case, is illustrated by the case of Boyd v. Dunlap, 1 John, ch. R. 479, and the doctrine is well sustained both on principle and authority.
A just discrimination is made between actual, intentional fraud and constructive fraud, or fraud in law. A conveyance fraudulent in fact is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity ; but it is otherwise with a deed obtained under suspicious circumstances, or which is only constructively fraudulent. Ibid. 482.
If the deed be void for fraud in fact, the creditor is entitled to avoid it without repayment, to the fraudulent purchaser,of the purchase money. But where it is only fraudulent by construction of law, the purchaser will be protected to the extent of refunding his purchase money, or allowing the conveyance to stand as a security for it. In the language of Chancellor Kent, in the case referred to, “ Nothing can be more equitable than this mode of dealing’ with these conveyances of such indecisive and dubious aspect, that they cannot cither be entirely suppressed or entirely supported with satisfaction and safety.” This principle has been applied to the case of a purchaser at a great undervalue, connected with other inequitable or suspicious circumstances. Ibid. 482, and cases there cited. So a deed, with a small consideration, was set aside in equity, in favor of a creditor, so far as to let in his debt. Lord Hardwick held that the creditor was entitled to this relief, whether he could or could not have set aside the deed at law. 2 Ves., 51; Id. 516; 1 Vern., 465.
This doctrine we think applies to tlie present case.
The inadequacy of the consideration — taking into view the under value at which the lands were estimated, and the absence of proof of Mrs Connell's account which ivas admitted in part discharge of the purchase money, and other circumstances of a suspicious nature surrounding the transaction— forbids that the transaction should bo. permitted to stand as *583 an absolute conveyance of the lands. But yet, inasmuch as the proof, when all the circumstances are properly considered) fails to establish actual fraud, and the motives which proba-bly led to the sale and purchase of the lands being compatible with the absence of any positive intention or purpose, on the part of either, to defraud the creditors of James T. Connell, and the fact being sufficiently established that Mrs. Connell really did advance a large sum of money upon the faith of the conveyance, we think it clear that the deed should be permitted to stand as a security for the purpose of reimbursement and indemnity to her, to the extent of the money really advanced by her, and likewise to the extent of her account against James T. Connell so fur as she may be able to establish, by satisfactory proof, that the same was an existing, Sonet fide debt due to her from her son, at the time of the conveyance.
The cause will be remanded, to afford Mrs. Connell opportunity to establish her account; upon this being done, a sale of the lands will be decreed, unless Mrs. Connell will advance the difference in amount between the sum which shall bo found to have been paid by her and the fair value of the land, provided such value may be ascertained in any satisfactory mode, otherwise than by a sale.
The decree will be reversed thus far.